**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Keith Ondre HENDERSON, Defendant-Appellant.**

**No. 84CA0892.**

Colorado Court of Appeals, Div. I.

Aug. 28, 1986.

Rehearing Denied Sept. 18, 1986.

Certiorari Granted (Henderson) Dec. 15, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy, Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Martin J. Gerra, III, Deputy State Public Defender, Denver, for defendant-appellant.

METZGER, Judge.

Defendant, Keith Ondre Henderson, appeals from the judgments of conviction entered upon jury verdicts finding him guilty of aggravated robbery and theft. He contends that (1) the trial court erred when it denied his motion for judgment of acquittal; (2) the trial court erred when it admitted irrelevant and unduly prejudicial evidence; and (3) the application of § 18–1–105(9)(a)(II), C.R.S. (1985 Cum.Supp.) to enhance his sentence violated his right to due process of law. We affirm.

At approximately 12:30 a.m. on September 15, 1983, two men robbed a fast food restaurant in Aurora. They took over $500 in bills banded in packs of twenty-five bills per pack, and several rolls of coins.

Eyewitnesses described the perpetrators as black males in their twenties. One of the robbers wore a sweatshirt with a dark blue hood and a blue or purple bandanna. His accomplice wore a sweatshirt with a gray hood and a green bandanna, and had a semi-automatic weapon, smaller than a .45 caliber, with a rubber band wrapped around its grip. The perpetrators also carried a white pillowcase with a print design, which one witness described as having a green print, and another witness described as an orange or sandy-colored print.

About half an hour after the robbery, the manager of the apartment complex where defendant lived saw two black persons, one of whom was carrying a white bag, jump out of a car and run in the general direction of defendant's apartment building. Soon thereafter, a police officer arrived at the apartment complex after hearing a report of the robbery including a description of the robbers on his police radio. When the officer arrived, the apartment manager contacted him and described what she had

seen. The officer then organized a police surveillance of defendant's apartment.

Several hours later, a man meeting the description of one of the robbers was arrested exiting defendant's apartment. A search revealed a shaving case containing $312 in currency, including bundled bills containing twenty-five bills to a bundle.

At approximately 10:00 a.m., police officers knocked on the door of defendant's apartment and identified themselves. Defendant's wife opened the door after a short delay. During this delay, the officers heard frantic movement within the apartment. Defendant's wife told the officers that defendant was in the bathroom. The bathroom was searched and found to be empty. One of the officers sensed movement in a walk-in closet in the master bedroom, ordered defendant to come out, and he complied.

Upon obtaining a search warrant, a search of defendant's apartment was performed. Blue-hooded and gray-hooded sweatshirts were found draped over two chairs. A white pillow case with a green and salmon-colored floral design, a blue bandanna, and several rolls of coins were found together on a kitchen shelf. A green bandanna was found on the floor in one of the bedrooms. The officers found a glass jar containing 172 one-dollar bills and another $119 in loose cash on top of a bedroom dresser. Two semi-automatic handguns were found in a dresser drawer jammed together in the same holster. One of the handguns was a .32 caliber semi-automatic weapon with a rubber band wrapped around the grip.

The officers also found a sawed-off shotgun and a sawed-off pellet gun jammed into a single holster. These weapons were in the walk-in closet, in which defendant had been hiding.

Defendant was subsequently convicted of aggravated robbery and theft and received the maximum sentence in the aggravated range.

## I.

Defendant first contends that the trial court erred when it denied his motion for judgment of acquittal. He argues that the circumstantial evidence was insufficient to support the convictions. We disagree.

A motion for judgment of acquittal is properly denied if the relevant evidence viewed as a whole, in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. *People v. Gonzales*, 666 P.2d 123 (Colo. 1983); *People v. Andrews*, 632 P.2d 1012 (Colo.1981).

Upon a review of the record, we conclude that the evidence was sufficient to support a finding of guilt as to the crimes charged, and therefore, the trial court did not err in rejecting defendant's motion for judgment of acquittal.

## II.

Defendant next asserts that the trial court erred when it admitted into evidence the sawed-off shotgun, sawed-off pellet gun, and the holster found in the bedroom closet. Defendant argues that these items were not relevant, and if relevant, they were sufficiently prejudicial to outweigh any probative value they might have had. We disagree.

Having reviewed the entire record, even if admission of this evidence were error, it was harmless because of the overwhelming evidence of defendant's guilt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, reh'g denied, 386 U.S. 986, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967).

## III.

Defendant next contends that § 18–1–105(9)(a)(II), C.R.S. (1985 Cum.Supp.) is unconstitutional as applied to him because it denies him due process of law. Defendant argues that the statute violates due process because it does not require that a defendant be notified that the state is seeking enhanced punishment, nor does it pro-

vide that the state prove beyond a reasonable doubt that a defendant was on parole for another felony when he committed the felony at issue. We conclude that the requirements of procedural due process were met in this case.

Section 18–1–105(9)(a), C.R.S. (1985 Cum. Supp.), provides:

"The presence of any one or more of the following extraordinary aggravating circumstances shall require the court, if it sentences the defendant to incarceration, to sentence the defendant to a term greater than the maximum in the presumptive range, but not more than twice the maximum term authorized in the presumptive range for punishment of a felony:

. . . .

(II) The defendant was on parole for another felony at the time of commission of the felony. . . ."

This section, like § 18–1–105(9)(a)(III), C.R.S. (1985 Cum.Supp.) (providing for enhanced punishment if a defendant is on probation for another felony at the time of the commission of the substantive felony) is a sentence enhancement provision to which certain procedural safeguards attach. *People v. Lacey*, 723 P.2d 111 (Colo. 1986); *see also People v. Murphy*, 722 P.2d 407 (Colo.1986).

■ In *People v. Lacey, supra*, the court discussed the required procedural safeguards as follows:

"While we agree that a defendant subject to 18–1–105(9)(a)(III) is entitled to notice that he is subject to enhanced punishment, and that, where the defendant contests his probationary status, the prosecution has the burden of proving defendant's probationary status, we do not believe that the statute itself is invalid for failing to set forth such provisions."

We believe that the rationale in *People v. Lacey, supra*, is equally applicable to the issue involving a defendant's parole status under § 18–1–105(9)(a)(II), C.R.S. (1985 Cum.Supp.). Accordingly, we must deter-

mine if defendant received adequate notice that he was subject to enhanced punishment, and if the prosecution met its burden of proof concerning defendant's status as a parolee.

■ The record shows that defendant had reasonable notice that he was subject to enhanced punishment under the statute. Defendant's sentencing hearing was scheduled for April 19, 1984. During this hearing, the prosecution informed defendant and the court that it intended to seek an enhanced sentence under § 18–1–105(9)(a)(II), C.R.S. (1985 Cum.Supp.). During this hearing as well, defendant's parole officer testified that defendant was on parole at the time the crimes of aggravated robbery and theft were committed. The prosecutor stated that he had previously tendered to defense counsel a copy of the judgment of conviction and mittimus for defendant's prior felony conviction which resulted in defendant's parole status. At defendant's request, sentencing was continued, and defendant was sentenced on June 13, 1984, nearly two months later. Under these circumstances, we conclude that defendant was given adequate notice that he was subject to an enhanced sentence because he was specifically notified, in open court, two months before his final sentencing hearing.

■ We also reject defendant's argument that the prosecution failed to meet its burden of proof that defendant was on parole. At the initial sentencing hearing, the prosecution presented testimony from defendant's parole officer, and provided documents to the trial court which supported its allegation that defendant was on parole for another felony at the time he committed the present offense. Defendant did not contest his alleged status as a parolee at either sentencing hearing. Under these circumstances, the prosecution met its burden of proving that defendant was on parole.

The judgments of conviction and sentences are affirmed.

PIERCE and STERNBERG, JJ., concur.